NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEDDY BALDWIN,<br><br>            Petitioner,<br><br>    vs.<br><br>BOB HOREL, Warden,<br><br>            Respondent. | No. C 06-06416 JF (PR)<br><br>**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS** |

Petitioner, a state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, on the ground that his state conviction is unconstitutional. The Court found that the petition stated two cognizable claims and ordered Respondent to show cause why the petition should not be granted. Respondent filed an answer addressing the merits of the petition, and Petitioner filed a traverse. Having reviewed the papers and the underlying record, the Court concludes that Petitioner is not entitled to relief based on the claims presented and will deny the petition.

**BACKGROUND**

Petitioner pleaded guilty in Santa Clara Superior Court to reckless driving while

1  fleeing a police officer (Cal. Veh. Code § 2800.2(a)), driving under the influence of drugs
2  and alcohol (Cal. Veh. Code § 23152(a)), and using or being under the influence of
3  cocaine (Cal. Health & Safety Code § 11550(a)).  Petitioner also admitted to two strike
4  priors involving convictions of first degree burglary, (Pen. Code § 459).  On January 20,
5  2005, Petitioner was sentenced to 25 years to life in state prison pursuant to California
6  Penal Code § 667(b)-(i).[1]

7  Petitioner appealed his sentence and the state appellate court affirmed the
8  judgment and sentence on October 4, 2004.  Petitioner did not seek review in the
9  California Supreme Court.

10  Petitioner filed a state habeas petition in the state superior court which denied the
11  petition on November 22, 2005.  The California Court of Appeal denied the state petition
12  on January 23, 2006.  The California Supreme Court denied review on October 11, 2006.
13  Petitioner filed the instant federal petition on October 13, 2006.

## DISCUSSION

### A.    Standard of Review

Because the instant petition was filed after April 24, 1996, it is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), which imposes significant restrictions on the scope of federal habeas corpus proceedings.  Under AEDPA, a federal court cannot grant habeas relief with respect to a state court proceeding unless the state court's ruling was "contrary to, or an involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

---

[1] All statutory references are to the California Penal Code unless otherwise noted.

question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id.</u> at 411.

A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." <u>Id.</u> at 409. The "objectively unreasonable" standard does not equate to "clear error" because "[t]hese two standards . . . are not the same. The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003).

A federal habeas court may grant the writ it if concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). The court must presume correct any determination of a factual issue made by a state court unless petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**B.**   **<u>Legal Claims and Analysis</u>**

   1.   <u>Cruel and Unusual Punishment</u>

Petitioner claims that his prison sentence of 25 years to life under the California Three Strikes law, § 667(b)-(i), violates the Eighth Amendment's prohibition against cruel and unusual punishment.

A criminal sentence that is not proportionate to the crime for which the defendant was convicted violates the Eighth Amendment. <u>Solem v. Helm</u>, 463 U.S. 277, 303 (1983)

(sentence of life imprisonment without possibility of parole for seventh nonviolent felony violates 8th Amendment).  But "outside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare." Id. at 289-90 (citation and quotation marks omitted).  "The Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." Ewing v. California, 538 U.S.11, 24-25 (2003) (quoting Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)).  Under the proportionality principle, the threshold determination for the court is whether petitioner's sentence is one of the rare cases in which a comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.  Harmelin, 501 U.S. at 1005; Ewing, 539 U.S. at 30-33 (applying Harmelin standard).  Only if such an inference arises does the court proceed to compare petitioner's sentence with sentences in the same and other jurisdictions.  See Harmelin, 501 U.S. at 1005; cf. Ewing, 539 U.S. at 23.  The threshold for an "inference of gross disproportionality" is quite high.  See, e.g., id. at 30 (sentence of 25 years to life for conviction of grand theft (for shoplifting three golf clubs) with prior convictions was not grossly disproportionate); Harmelin, 501 U.S. at 1008-09 (mandatory sentence of life without possibility of parole for first offense of possession of 672 grams of cocaine did not raise inference of gross disproportionality).

In determining whether a sentence is grossly disproportionate under a recidivist sentencing statute, the court looks to whether such an "extreme sentence is justified by the gravity of [an individual's] most recent offense and criminal history." Ramirez v. Castro, 365 F.3d 755, 768 (9th Cir. 2004); see Ewing, 538 U.S. at 28.  In considering the relevance of the recent offense and criminal history, a court must consider the "factual specifics" of an individual's priors to determine whether the conduct involved violence or was particularly serious.  Reyes v. Brown, 399 F.3d 964, 970 (9th Cir. 2005).

In judging the appropriateness of a sentence under a recidivist statute, a court may take into account the government's interest not only in punishing the offense of

conviction, but also its interest "'in dealing in a harsher manner with those who [are] repeat[] criminal[s].'" United States v. Bland, 961 F.2d 123, 129 (9th Cir.) (quoting Rummel v. Estelle, 445 U.S. 263, 276 (1980), cert. denied, 506 U.S. 858 (1992). The Eighth Amendment does not preclude a state from making a judgment that protecting the public safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime, as may occur in a sentencing scheme that imposes longer terms on recidivists. Ewing, 538 U.S. at 29-30 (upholding 25-to-life sentence for recidivist convicted of grand theft); Rummel, 445 U.S. at 284-85 (upholding life sentence with possibility of parole for recidivist convicted of fraudulent use of credit card for $80, passing forged check for $28.36 and obtaining $120.75 under false pretenses); Taylor v. Lewis, 460 F.3d 1093, 1101-02 (9th Cir. 2006) (upholding sentence of twenty-five years-to-life for possession of .036 grams of cocaine base where petitioner served multiple prior prison terms and his prior offenses involved violence and crimes against a person); Bland, 961 F.2d at 128-29 (upholding life sentence without the possibility of parole for being a felon in possession of a firearm with thirteen prior violent felony convictions, including rape and assault).

The standard of review in § 2254(d) represents an additional problem for habeas petitioners asserting Eighth Amendment sentencing claims. In Lockyer v. Andrade, 538 U.S. 63, 72-3 (2003), the Supreme Court rejected the notion that its case law was clear or consistent enough to be clearly established that a gross proportionality principle did apply to sentences for terms of years (as well as to death penalty). However, the precise contours of the principle "are unclear, applicable only in the 'exceedingly rare' and 'extreme' cases." Id. at 73 (quoting Harmelin, 501 U.S. at 1001). "[T]he principle reserves a constitutional violation for only the extraordinary case." Id. at 76.

Petitioner was sentenced pursuant to California's Three Strikes law, which is triggered when a defendant is convicted of a felony, and he has suffered one or more prior "serious" or "violent" felony convictions. See Cal. Penal Code § 667(e)(2)(A). Under the relevant statute, any felony conviction may constitute the third strike and subject a

1  defendant to a term of 25 years to life in prison. Lockyer, 538 U.S. at 67.

2       Petitioner's triggering offense was reckless driving while fleeing a police officer,

3  which properly was charged as a felony under California law. The triggering offense was

4  described by the trial court as "an incredibly dangerous act... in total disregard for human

5  life." (Clerk's Transcript at 28) (Resp't Ex. A). The California Court of Appeal

6  described the offense in its denial of this claim on appeal:

> The current offense occurred in February 2003. An officer observed [Petitioner] parked at the side of the road in a vehicle without a front license plate. When the officer made a U-turn to check on [Petitioner], [Petitioner] sped off. The officer pursued [Petitioner], during which time [Petitioner] reached speeds of 80 m.p.h. on residential streets, weaved in and out of traffic, and drove through multiple stop signs. [Petitioner] continued on even after officers used a "'stop stick'" which punctured his rear tires. Eventually, [Petitioner] drove the vehicle off an embankment, exited the vehicle, and ran toward a chain link fence. He was ordered at gunpoint to get on the ground, and he complied. He told the officers that he ran because he had just smoked two rocks of "'crack'" and was high. After [Petitioner's] arrest he was found to be under the influence of cocaine.

People v. Baldwin, No. H027059, slip op. 3 (Cal.Ct.App. Oct. 4, 2004) (Resp't Ex. F).

     The state appellate court also reviewed Petitioner's lengthy criminal history, which spanned fifteen years, and his two prior strikes for burglary:

> [Petitioner] was born in 1967 in New York. In 1988, he received a county jail sentence in Santa Clara County following a felony conviction for possession of a controlled substance. In May 1991, [Petitioner] was sentenced to prison after convictions for residential burglary and two counts of possession of a controlled substance. He had broken into a friend's residence and stolen a VCR and stereo. When police stopped [Petitioner], he had cocaine in his possession. [Petitioner] admitted trading the VCR and stereo for cocaine. In May 1993, [Petitioner] was sentenced to prison again as a result of a second conviction for residential burglary and burglary of a vehicle. He told a police officer at the time that he steals to buy cocaine. In 1999, he was sentenced to one year in county jail in San Mateo County for felony possession of a controlled substance.
>     In addition to these seven prior felony convictions, [Petitioner] has 18 prior misdemeanor convictions: 12 convictions for driving on a suspended or revoked license; two convictions for driving under the influence; two convictions for being under the influence; and one conviction each for driving without a license and possession of drug paraphernalia.

Id. at 2.

///

///

The state appellate court properly considered the gravity of Petitioner's triggering offense and his lengthy criminal history in rejecting Petitioner's claim:

> [Petitioner's] criminal history began as a young adult. He received seven felony convictions, including two strikes, and 18 misdemeanor convictions between 1988 and the current February 2003 offenses. He also served two prior prison terms and at least two jail terms during this time. His two prior strikes occurred during separate incidents and, like most if not all of his other convictions, were related to [Petitioner's] drug abuse. His current offenses, his eighth felony and 19th and 20th misdemeanors, were also drug related. As the trial court noted, "the current crimes alone are not what has earned [Petitioner] a life sentence. He is a frequent repeat offender who has not learned from past incarceration." (citation omitted) The Three Strikes sentencing scheme addresses the career criminal, like [Petitioner]. (citation omitted) The trial court's finding that, because of the nature and circumstances of [Petitioner's] current and prior offenses, the particulars of [Petitioner's] background, character, and prospects were not enough to deem [Petitioner] outside the spirit of the Three Strikes law is neither irrational nor arbitrary.

Id. at 3; see Ramirez, 365 F.3d at 768. Just like the defendants in Ewing and Andrade whose sentences were upheld as constitutional, Petitioner had a lengthy criminal history. Petitioner received a long sentence because he was a recidivist, and his recidivism must be considered in evaluating the constitutionality of his sentence. Ramirez dictates that "because [the defendant] was sentenced as a recidivist under the Three Strikes law, 'in weighing the gravity' of his offense in our proportionality analysis, 'we must place on the scales not only his current felony,' but also his criminal history." Ramirez, 365 F.3d at 768 (quoting Ewing, 538 U.S. at 29).

Petitioner's case can be distinguished from Ramirez, in which the Ninth Circuit held that a 25 years to life sentence was grossly disproportionate to the crime committed where the current crime was petty theft with a prior theft-related conviction and two prior strike convictions were robbery convictions. Petitioner's current crime for reckless evasion was certainly much more serious than Ramirez's shoplifting crime, which was found to be nonviolent and did not threaten "'to cause grave harm to society'" and therefore alone would not justify a sentence of 25 years to life. See Ramirez, 365 F.3d at 768 (quoting Harmelin, 501 U.S. at 1003). Furthermore, Ramirez's "prior criminal history [was] comprised solely of two 1991 convictions for second-degree robbery obtained through a single guilty plea, for which his total sentence was one year in county

1  jail and three years probation." Id.  In contrast, Petitioner's criminal history was lengthy,
2  comprising of "seven felony convictions, including two strikes, and 18 misdemeanor
3  convictions between 1988 and the current February 2003 offenses," and "[h]e also served
4  two prior prison terms and at least two jail terms during this time." People v. Baldwin,
5  slip op. at 3.

6        Petitioner's case is similar to Rios v. Garcia, 390 F.3d 1082 (9th Cir. 2004), in
7  which the Ninth Circuit held that a 25 years to life sentence did not offend the Eighth
8  Amendment under the circumstances.  Rios shoplifted two watches having a combined
9  value of $79.88, was chased by a loss prevention officer and was apprehended in the store
10 parking lot after a minor struggle. Id. at 1083.  Rios' current conviction was for petty
11 theft with a prior theft-related conviction and second degree commercial burglary, and his
12 two strike prior strike convictions were from a 1987 guilty plea to two counts of robbery.
13 The dissimilarity in the gravity of the current offense does not weigh in Petitioner's favor
14 since his crime of reckless evasion was more serious than Rios' crime of petty theft.  The
15 court also distinguished Rios from Ramirez: "unlike the defendant in Ramirez, Rios
16 struggled with the loss prevention officer and tried to avoid apprehension.  Additionally,
17 his prior robbery 'strikes' involved the threat of violence, because his cohort used a knife.
18 As did the defendants in Ewing and Andrade..., Rios has a lengthy criminal history,
19 beginning in 1982, and he has been incarcerated several times." Rios, 390 F.3d at 1086.
20 Similarly, Petitioner also tried to avoid apprehension by recklessly driving his vehicle
21 through residential streets with complete disregard to the danger he posed to others.
22 Furthermore, the Report of Probation Officer at sentencing shows that one of Petitioner's
23 prior convictions involved the threat of violence.  (Pet. Ex. 1.)  During the commission of
24 his second burglary, Petitioner was caught in the act of attempting to break into a car.  (Id.
25 at 72.)  The owner of the car chased Petitioner and cornered him in a dead end street, at
26 which point Petitioner displayed a screwdriver.  It is of no consequence that Petitioner
27 was ultimately overpowered by the owner of the car because Petitioner's wielding a
28 screwdriver against another can certainly constitute a "threat of violence."  See Rios, 390

1  F.3d at 1086.  Petitioner's assertion in his traverse that he "never harmed anyone," (Trav.
2  at 4), does not change the result because the court in <u>Rios</u> found that a crime was violent
3  where there was a "*threat* of harm," even where the threat did not come from the
4  defendant but from a cohort using a knife.  <u>Id.</u>

5  In light of Petitioner's criminal history and current felony offense, Petitioner's case
6  is not that "rare case in which a threshold comparison of the crime committed and the
7  sentence imposed leads to an inference of gross disproportionality."  <u>Ewing</u>, 358 U.S. at
8  30 (quoting <u>Harmelin</u>, 501 U.S. at 1005).  Accordingly, the state court's rejection of
9  Petitioner's Eighth Amendment claim was not contrary to, or involved an unreasonable
10 application of, clearly established Supreme Court precedent, or involved an objectively
11 unreasonable determination of the facts.  <u>See</u> 28 U.S.C. § 2254(d).

12       2.      <u>Ineffective Assistance of Appellate Counsel</u>

13 Petitioner's second claim for relief is that his appellate counsel provided
14 ineffective assistance by failing to raise both State and Federal Constitutional challenges
15 to his sentence in his direct appeal.

16 The Due Process Clause of the Fourteenth Amendment guarantees a criminal
17 defendant the effective assistance of counsel on his first appeal.  <u>Evitts v. Lucey</u>, 469 U.S.
18 387 (1985).  In evaluating such a claim, the federal court applies the standard set forth in
19 <u>Strickland</u>.  <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000).  A defendant therefore must
20 show that counsel's advice fell below an objective standard of reasonableness and that
21 there is a reasonable probability that, but for counsel's unprofessional errors, he would
22 have prevailed on appeal.  <u>Miller v. Keeney</u>, 882 F.2d 1428, 1434 & n.9 (9th Cir. 1989).
23 In the instant case, counsel's failure to challenge the constitutionality of Petitioner's
24 sentence on direct appeal did not prevent Petitioner from raising the claim in a state
25 habeas petition.  Moreover, as the claim was rejected by the state courts on habeas
26 review, petitioner has made no showing that there is a "reasonable likelihood" of a
27 different result had the claims been raised on direct appeal.  Finally, as discussed above,
28 this Court has found that Petitioner's unconstitutional sentence claim is without merit.

1  An appellate lawyer's failure to raise a meritless claim is neither unreasonable nor
2  prejudicial.  Id. at 1434 (noting that one of "hallmarks of effective appellate advocacy" is
3  weeding out weaker issues); see also Jones v. Barnes, 463 U.S. 745, 751 (1983) (holding
4  appellate counsel has no duty to raise every nonfrivolous claim requested by appellant).
5  Consequently, Petitioner did not receive ineffective assistance of appellate counsel nor
6  was he prejudiced by the manner in which his appeal was conducted.

## CONCLUSION

The Court concludes that Petitioner has failed to show any violation of his federal constitutional rights in the underlying state criminal proceedings.  Accordingly, the petition for a writ of habeas corpus is DENIED.

IT IS SO ORDERED.

DATED: 9/5/08

JEREMY FOGEL
United States District Judge